[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff and the defendant intermarried on June 1, 1974 at Sayreville, New Jersey. Both parties have resided continuously in this state since 1985. There are two minor children issue of the marriage: Jessica L. Cody, born January 12, 1979 and Samantha H. Cody born September 1, 1988.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in 46b-56,46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
This is a marriage of some 17 years with two minor children aged 12 and 2 1/2 years. The defendant wife is 39 years of age and in good health. Throughout most of their marriage she assumed the role of homemaker raising their two children. The defendant has been employed outside the home since mid-1990 and is presently earning a gross of approximately $455.77 per week or a net of $347.37 per week.
The plaintiff husband is also aged 39 and in good health. CT Page 5893 Throughout their marriage the plaintiff has devoted his energies to his career at IBM and presently holds a responsible position earning approximately $88,500 to $90,000 per year.
Both parties are young, intelligent and articulate people. Unfortunately, the parties were unable to resolve their marital difficulties. The court does not place any greater degree of fault on either party as the court finds that both parties contributed to the causes for the breakdown of the marriage.
The following orders shall enter:
Custody/Visitation
The court finds that both parties are loving and caring parents. Both parties appear to be deeply concerned about the welfare of their children. The parties agreed that the defendant wife shall have sole legal custody of the minor children and it is so ordered, subject to the rights of reasonable, liberal and flexible visitation to the plaintiff father and further subject to the following conditions:
1. The defendant mother shall be responsible for making the routine day-to-day decisions regarding the children when the children are physically residing with her.
2. The parties shall consult, confer and discuss with each other regarding all matters of policy involving the minor children as to such topics as health, education, camps, elective medical and dental services and general welfare of the minor children. Both parties shall seek each others input and shall consider the others view in reaching decisions involving the minor children. Both parties shall attempt to adopt a harmonious policy best suited for the interests of the minor children taking into account, the activities and ages of the minor children and the desires of the minor children. The defendant mother shall, however, make the final decision.
3. The defendant mother shall provide the plaintiff father with copies of the children's report cards and school evaluations, shall inform the plaintiff or arrange with school authorities for duplicate notices to be sent to the plaintiff of all conferences, parents' meetings and parent-child activities scheduled with the children's school as well as religious events. The plaintiff as well as the defendant, shall have the right to attend and to participate in all such school and religious events.
4. Both parties shall foster a feeling of affection between the minor children and each of the parents and neither CT Page 5894 party shall do anything which may estrange either child from the other party, nor injure the opinion of either child as to the other party or act in any way so as to hamper the free and natural development of the children's love and respect for the other. 5. The defendant shall keep the plaintiff informed of any illness or accident or other circumstances seriously affecting the health or welfare of the minor children and shall promptly notify the plaintiff of such happening. The plaintiff shall have access to the medical and dental records and reports of the minor children.
6. The plaintiff father shall have reasonable telephone access to the minor children and shall have unhampered contact with the minor children. The defendant mother shall have reasonable telephone access with the minor children while they are with the plaintiff.
7. Both parties shall keep the other informed at all times of the whereabouts of the minor children while the children are with the plaintiff or the defendant, if it is other than in the general area of the home of either party.
Visitation
The plaintiff shall be entitled to reasonable, flexible and liberal visitation to include the following:
1. The plaintiff shall have visitation on alternate weekends commencing on Fridays at 6:30 p.m. to Sunday at 7:30 p.m. Both parties shall pay special attention to special events and shall go out of their way to give the other party visitation on weekends containing these special events such as weddings, funerals, family reunions and events, business trips of the plaintiff father, and any other similar scheduled events.
2. On the alternate weekends, (Saturday or Sunday), when the plaintiff does not have visitation, in the event the weekend has a special event as set forth above, the plaintiff shall be entitled to have the minor children from 1:00 p.m. to 7:30 p.m. on the Saturday or Sunday, further, provided that the defendant is not taking the minor children out of state to visit relatives or for vacation.
3. The plaintiff shall have a mid-week visitation on Wednesdays from 5:30 p.m. to the following morning. The plaintiff shall return the children the following morning to school, camp, home or day care as the defendant requests. The plaintiff shall have the right to change the day of the mid-week visitation for business reasons, not more than twice per month, CT Page 5895 upon reasonable and sufficient notice to the defendant, taking into account the activities of the minor children and previous plans of the defendant.
4. The plaintiff shall be entitled to two weeks visitation during the summer months.
5. Commencing in February 1992, and alternating thereafter, the plaintiff shall have the minor children for the February School Vacation week. If the plaintiff has not had visitation on the weekend before the break, he shall pick up the minor children on Sunday evening at 6:30 p.m. and return them at 7:30 p.m. the following Sunday. If the plaintiff has had visitation the weekend before the school break, he shall return the minor children by 7:30 p.m. on the Friday at the end of the school break week.
6. The parties shall alternate the Christmas holiday as follows: one party shall have the minor children from 3:00 p.m. on Christmas Eve to Noon on Christmas Day; the other party shall have the children from Noon on Christmas Day to Noon on December 26.
In addition to the above, the plaintiff shall be entitled to have the minor children for two consecutive days and two full nights during the Christmas holiday.
7. The parties shall alternate the following holidays:
Martin Luther King Day
Memorial Day
July 4th Holiday
Labor Day
Columbus Day
Veterans Day
The plaintiff shall be entitled to pick up the children at 5:30 p.m. on the evening before each of the above holidays and shall return the children the following morning after the holiday to school, camp or home as the defendant directs.
8. The plaintiff shall be entitled to share some portion of the day or evening of each child's Birthday with said child.
9. The defendant shall have the minor children on CT Page 5896 Mother's Day, and the plaintiff shall have the minor children on Father's Day from 11:00 a.m. to 7:30 p.m., in the event Father's Day is not on the plaintiff's alternate weekend visitation.
10. The parties shall alternate the Thanksgiving Day holiday with the plaintiff returning the minor children to their home on Friday at 7:30 p.m.
11. The plaintiff shall be entitled to such other and further times of visitation as the parties shall mutually agree, keeping in mind the age, input and activities of the minor children.
12. If for any reason the parties are unable to agree with respect to the specific rights of visitation as set forth, the parties shall submit such dispute to the Family Service Division of the Superior Court for mediation. If such mediation is unsuccessful, the parties shall return to court for a further hearing and orders thereon.
Real Property
The parties agreed that the jointly owned marital home located at 170 Georgetown Road, Weston, Connecticut has an estimated fair market value of $350,000. This property is subject to a first mortgage of approximately $96,947 and a Home Equity Loan of $30,000 — leaving a total equity of approximately $223,057.
Unfortunately, the parties also jointly own a condo in Killington, Vermont with a mortgage debt of approximately $92,000 — but having a value of approximately $50,000 to $52,000. This property thus, has a negative shortfall in excess of $40,000. There is an outstanding auction bid of $52,000 for the Vermont Condo. The parties also have a Chemical Bank Privileged checking account credit line outstanding of $10,000.
In weighing the equities, the court has determined that the equities are in favor of the defendant remaining in the marital home at the present time.
Marital Home
1. The defendant and two minor children are currently residing in the marital home located at 170 Georgetown Road, Weston, Connecticut. In view of the present real estate market at this time, and to facilitate the visitation schedule that has been set up, the court awards the defendant the exclusive possession of the marital home until the first of the following: the defendant's remarriage, or June 30, 1997 or earlier at the CT Page 5897 defendant's sole discretion, at which time the marital home shall be listed with a real estate broker and shall be promptly sold.
2. Until such time as the marital home is sold, the defendant shall be responsible for the payment of the 1st mortgage, the home equity loan, taxes, insurance and all utilities.
3. Any major repair in excess of $350, shall be equally divided between the parties.
4. Upon the sale of the marital home, after the payment of the balance due on the first mortgage, the home equity loan, the real estate commission and usual closing costs, and the balance if any, of the Vermont shortfall, the net proceeds shall be equally divided, 50% to the plaintiff and 50% to the defendant.
5. Title to the marital home shall remain in both names until such time as the home is sold. Each party shall bear one-half of any capital gains tax incurred upon the sale of the marital home.
6. The court shall retain jurisdiction over any disputes arising out of the sale of the marital home.
Vermont Property
The parties jointly own a condo, 32 Mt. Greene II-B, Sherburne, Vermont. The court orders the immediate sale of the condo for the auction bid of $52,000. Should this sale not be consummated for any reason, then the property shall be listed immediately with a real estate broker and shall be sold forthwith.
The net debt and shortfall including any tax liabilities and further, including any capital gains consequences, shall be paid as follows:
1. Firstly, the net proceeds of the plaintiff's IBM stock listed at $30,000 on his financial affidavit shall be used;
2. secondly, the three rental income checks from the Vermont condo — totalling approximately $2,875, and any other rental income checks that may be received prior to the closing, shall be used
3. thirdly, the $2,500 — New York State income tax refund held by the plaintiff shall be applied; CT Page 5898
4. fourthly, the net proceeds of the plaintiff's deferred savings account;
5. the balance of the remaining shortfall or debt, if any, shall come from the equity in the marital home. The plaintiff shall be permitted to borrow against the equity in the marital home, a sum sufficient to pay said remaining shortfall or debt — including any capital gains tax. The plaintiff shall be solely responsible for the amount so borrowed until such time as the marital home is sold.
6. The defendant shall cooperate with the plaintiff in the endeavors to borrow against the equity in the marital home for purposes of the Vermont Condo shortfall.
7. The court shall retain jurisdiction in connection with any disputes arising out of the sale of the Vermont property.
8. Upon the sale of the marital home, the balance, if any, of the amount borrowed from the home equity for the Vermont shortfall shall be paid in full from the gross proceeds before the net proceeds are divided between the parties.
Alimony
1. The plaintiff, during his lifetime, shall pay to the defendant as periodic alimony the sum of $525 per month annualized at $6,300 per year until such time as the defendant dies, remarries, cohabits within the meaning of the statute, or 8 years from date, whichever event shall first occur. Said payment shall commence August 1, 1991.
Child Support
1. Commencing August 1, 1991, the plaintiff shall pay to the defendant the sum of $1,950 per month for the support of the two minor children annualized at $23,400 per year.
2. Commencing August 1, 1991, the plaintiff shall pay 1/3 of the weekly cost for day care for the minor child Samantha, not to exceed the sum of $45.00 per week until such time as the child attends first grade.
3. The plaintiff shall pay one-half of the summer camp for the minor children, not to exceed $600, commencing in the summer of 1992. The defendant shall confer and consult with the plaintiff prior to enrolling either child in a summer camp program. The defendant's decision shall be controlling
4. Upon the older child reaching the age of 18, her CT Page 5899 emancipation or death, and if the parties are unable to agree, support for the remaining minor shall be determined in accordance with the child support guidelines then in effect if appropriate, or by order of the court after a hearing.
Life Insurance
1. The plaintiff shall maintain One Hundred and Fifty Thousand Dollars ($150,000) in life insurance for the benefit of the defendant and two minor children for so long as the plaintiff has an obligation for alimony and/or child support. This provision shall be modifiable.
2. In addition to the above, the plaintiff shall designate the defendant and two minor children as irrevocable beneficiaries on his group life insurance policy, as is available through his employment at IBM, for so long as the plaintiff has alimony and/or child support obligations. This provision shall be modifiable.
Medical Coverage
1. The plaintiff shall provide and maintain hospital, medical and dental insurance coverage for the benefit of the minor children, including orthodontia, psychological counseling or psychiatric care, as is available through his place of employment. All unreimbursed medical expenses shall be equally divided between the plaintiff and the defendant.
2. The plaintiff shall pay to the defendant forthwith, any and all insurance reimbursement payments received by him relating to bills paid by the defendant. The evidence presented indicated the amount due was less than $200.
3. The provisions of 46b-84 (c) with respect to health insurance forms is hereby ordered.
4. The plaintiff husband shall meet his own personal deductible on his own medical coverage. The plaintiff's medical bills shall be applied against his deductible. This provision shall be in force and effect for so long as the defendant wife is employed at IBM.
Miscellaneous
1. Each party shall be entitled to their respective IRA's as indicated on their respective financial affidavits.
2. The defendant shall be entitled to the checking account and IBM Credit Union account. CT Page 5900
3. The plaintiff husband shall be responsible for the bill due the Weston Police Department in the amount of $114.27.
4. Within three years of date, the plaintiff shall restore the sum of $6,000 to the custodial account of the minor child Jessica. The plaintiff shall be the custodian of this account and shall not remove any sums therefrom without the written consent of the defendant. Said account shall be the property of the minor child Jessica. The plaintiff shall provide verification of the restoration of these funds to the custodial account to the defendant.
5. The plaintiff's financial affidavit filed at trial, failed to indicate that the T. Rowe Price Money Market fund and the Evergreen Money Market Trust bank accounts were custodial funds. It is ordered that these funds shall remain as custodial accounts for the minor children and the plaintiff shall not remove any sums therefrom without the written consent of the defendant.
Personal Property
1. The plaintiff shall be entitled to his tread mill, Marcy gym set, the TV-clock radio, and his personal clothes and belongings, The remaining items of personal property contained in the marital home shall be divided between the parties as they shall agree. If the parties are unable to agree, they shall consult with Family Services for mediation. If this fails, the court will enter appropriate orders after holding a hearing on this matter.
2. The plaintiff shall be the sole owner of the 1981 BMW motor vehicle and the defendant shall execute the appropriate documents forthwith.
3. The defendant shall be entitled to her 1991 Nissan motor vehicle and shall be solely responsible for the loan thereon.
QDRO
The court orders that a Qualified Domestic Relations Order shall be prepared transferring to the defendant wife, a 35% share of the Core Retirement Benefit (IBM Retirement Plan). The personal retirement plan shall remain the sole property/asset of the plaintiff.
Income Tax CT Page 5901
1. The plaintiff shall be entitled to the income tax refunds, if any, on his 1990 Federal and State Income Tax Returns.
2. The plaintiff shall hold the defendant harmless from any and all liability, interest and/or penalties arising out of the parties joint income tax returns, including the 1988 and 1989 tax returns.
3. The plaintiff shall be entitled to claim the minor child Samantha as an exemption for income tax purposes and the defendant shall claim the minor child Jessica.
Debts
1. Each party shall be responsible for one-half of the Chemical Bank privileged checking account debt.
2. Each party shall be responsible for the remaining debts as shown on their respective financial affidavits, unless otherwise disposed of herein.
Counsel Fees
Neither party is awarded counsel fees. An immediate withholding is ordered.
COPPETO, J.